UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES DORSEY,                                                    DECISION
                                    Plaintiff,                          and
                        v.                                          ORDER

VALERIE SULLIVAN,                                          10-CV-00744F
ROBERT F. RAYMOND, and                               (consent)
STATE OF NEW YORK,
                                    Defendants.
_____

APPEARANCES:           JAMES DORSEY, *Pro Se*
                                4575 Lake Avenue
                                Apartment 907
                                Rochester, New York  14621

                                ERIC T. SCHNEIDERMAN
                                ATTORNEY GENERAL, STATE OF NEW YORK
                                Attorney for Defendants
                                KIM S. MURPHY
                                Assistant Attorney General, of Counsel
                                Main Place Tower
                                Suite 300A
                                350 Main Street
                                Buffalo, New York  14202

## JURISDICTION

On July 6, 2011, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 50), filed May 15, 2012.


## BACKGROUND

Plaintiff James Dorsey ("Plaintiff"), proceeding *pro se*, commenced this action on

September 15, 2010, while incarcerated at Bare Hills Correctional Facility ("Bare Hills"),

in Malone, New York, although the events relevant to this action occurred while Plaintiff

was incarcerated at Livingston Correctional Facility ("Livingston" or "the correctional facility") in Sonyea, New York.  Defendants to this action include the State of New York ("the State"), Livingston Deputy Superintendent for Programs Valerie Sullivan ("Sullivan"), and New York State Department of Corrections and Community Supervision ("DOCCS") ADA Coordinator (Central Office) Robert F. Raymond ("Raymond").  Plaintiff alleges Defendants discriminated against him based on Plaintiff's disability, total or partial amputation of all ten fingers, by denying Plaintiff's request that all door knobs within the correctional facility be replaced with level arm door openers and emergency push bards, in violation of Plaintiff's rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* ("Title II"), and Rehabilitation Act ("Rehab Act") § 504, 29 U.S.C. § 794 ("§ 504").  Plaintiff seeks as relief monetary damages for emotional distress, punitive damages, and a statewide injunction prohibiting DOCCS employees who are not specifically trained as such from serving as ADA Coordinator or from making any medical assessments.

On May 15, 2012, Defendants moved for summary judgment (Doc. No. 50) ("Defendants' Motion"), filing in support a Statement of Undisputed Facts (Doc. No. 51) ("Defendants' Statement of Facts"), Defendants' Memorandum of Law in Support of Summary Judgment (Doc. No. 52) ("Defendants' Memorandum"), the Declaration of Valerie Sullivan (Doc. No. 53), with attached exhibits A through H ("Sullivan Declaration Exh(s). __"), and the Declaration of Robert F. Raymond (Doc. No. 54) ("Raymond Declaration"), with attached exhibits A through D ("Raymond Declaration Exh(s). __"). On May 22, 2012, Plaintiff filed Plaintiff's Declaration Opposing Defendants' Motion for Summary Judgment (Doc. No. 56) ("Plaintiff's Declaration"), with attached exhibits A

through L ("Plaintiff's Exh(s). __"), a Statement of Disputed Facts (Doc. No. 57) ("Plaintiff's Statement of Facts"), the Memorandum of Law Opposing Defendants' Summary Judgment (Doc. No. 58) ("Plaintiff's Memorandum"), and the Affidavit of James Dorsey (Doc. No. 59) ("Plaintiff's Affidavit").  On June 20, 2012, Defendants filed in further support of summary judgment the Declaration of Assistant Attorney General Kim S. Murphy (Doc. No. 60) ("Murphy Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion is GRANTED.

## **FACTS**[1]

All ten fingers of Plaintiff James Dorsey ("Dorsey"), have been either completely or partly amputated as a result of an injury sustained more than twenty years ago, prior to Plaintiff's term of incarceration with New York State Department of Corrections and Community Supervision ("DOCCS"), which commenced on May 5, 2006.  DOCCS maintains a policy to provide reasonable accommodations to inmates in accordance with established procedures.  In particular, DOCCS Directive No. 2614 ("Directive No. 2614"),[2] provides, relevant to this case, that in compliance with Title II of the ADA, DOCCS

> is required to make 'reasonable accommodations' or modifications to existing policies and procedures to allow qualified inmate with disabilities the same opportunity as non-disabled inmates, unless to do so would be an undue burden

---

[1] Taken from the pleadings and motion papers filed in this action.
[2] Copies of Directive No. 2614 are filed as Sullivan Declaration Exh. H, Bates Stamp 000511-513, Raymond Declaration Exh. A, and Plaintiff's Exh. G.  The copies of Directive No. 2614, submitted by Sullivan and Raymond, are dated March 20, 2008, whereas the copy submitted by Plaintiff is dated April 6, 2010.  A comparison of the two versions of Directive No. 2614, however, reveals no substantive differences.

to [DOCCS], cause a fundamental alteration to a program, or compromise the
safety or security of the facility.
Directive No. 2416, § I. Policy.

On December 21, 2007, Plaintiff was sent to Coxsackie Correctional Facility

("Coxsackie"), for evaluation of Plaintiff's disability by a specialist to determine what

accommodations could assist Plaintiff's ability to function in the correctional facility.  At

Coxsackie, Plaintiff was evaluated by Dr. George Forrest ("Dr. Forrest"),[3] who

recommended use of level arm door openers.

Plaintiff was transferred to Livingston Correctional Facility ("Livingston" or "the

correctional facility"), where he was housed from August 19, 2008 until September 4,

2009.  While incarcerated at Livingston, Plaintiff submitted six requests for reasonable

accommodation of his disability, five of which were granted including strap-on sand

weights for Plaintiff to use when exercising, a specially altered bag in which to carry the

weights, a push button lamp instead of a standard lamp, a jacket that fastened with

Velcro instead of the standard zipper, and a prosthetic glove-like device, made out of a

multi-purpose non-skid material called Dycem, specially-designed to assist Plaintiff's in

his activities of daily living by improving Plaintiff's ability to grip objects ("Dycem

gloves").  The only reasonable accommodation request that was denied was made by

Plaintiff on October 7, 2008, requesting all door knobs at Livingston be replaced with

level arm door openers and all fire exits be equipped with level arm door openers and

"panic bars" (push bar) openers ("door opener request"). [4]  Sullivan Declaration Exh. H

---

[3] The record does not indicate whether Dr. Forrest is a medical doctor.
[4] Copies of all papers submitted in connection with Plaintiff's door opener request and subsequent inmate
grievance, including the initial inmate grievance, the denial, Plaintiff's appeal of the denial, and the
affirmance are filed as exhibits to the Complaint, and Plaintiff's Declaration, as well as to the Sullivan
Declaration Exh. H.  Because each page of the copies filed as Sullivan Declaration Exh. H is separately
stamped with Bates Nos. 000501-517, the court, in the interest of clarity, refers to the specific Bates Nos.
of  Exh. H.

at Bates No. 000510. Plaintiff's door opener request was denied on October 21, 2008 by Defendant Valerie Sullivan who, as Deputy Superintendent of Programs at Livingston, is responsible for handling inmate requests for accommodations of disabilities. *Id.* Sullivan's explanation for the denial included that doors accessible to Plaintiff are either controlled by corrections officers or can be manipulated by Plaintiff, and secure doors are both controlled by and must be opened by security personnel. *Id.*

Sullivan maintains Plaintiff's door opener request was denied as "unnecessary and unfeasible." Sullivan Declaration ¶ 9. According to Sullivan, most of the correctional facility's doors are controlled by security staff, rather than inmates, and Plaintiff, with the assistance of his Dycem gloves or the assistance of another inmate or DOCCS staff, should be able to manipulate the handles to those doors that are accessible to inmates. *Id.* Sullivan further maintains altering the correctional facility's structure by replacing all standard door knobs with the level door openers and emergency push bars requested by Plaintiff for the duration of Plaintiff's housing assignment at Livingston would be cost prohibitive. *Id.* ¶ 10.

After Sullivan denied Plaintiff's door opener request Plaintiff, on October 27, 2008, filed an inmate grievance ("inmate grievance"), with DOCCS Inmate Grievance Resolution Committee ("IGRC"), complaining the door opener request was improperly denied by Sullivan "who is not trained in occupational therapy, physiatry or any related field." Sullivan Declaration Exh. H, Bates No. 000507. Plaintiff further asserted that level arm door openers and panic bars were necessary to avoid placing Plaintiff at risk, based on his inability to operate standard door knobs, to enter and exit buildings and rooms, which is especially dangerous given that violent acts regularly occur within the

correctional facility setting. *Id.* at 000507-508. According to Plaintiff, Sullivan, by denying the door opener request, failed to heed the recommendations of Dr. Forrest, as well as Vocational Rehabilitation Counselor Mrs. E. Simmons, who evaluated Plaintiff on December 14, 2006 at Eastern Correctional Facility. *Id.* at 000507. Plaintiff maintains that based on their medical training, Dr. Forrest and Simmons are more qualified than Sullivan to determine what reasonable accommodations should be provided Plaintiff.[5] *Id.* at 000508. For relief, Plaintiff requested, *inter alia*, DOCCS Commissioner Brian Fischer ("Fischer") provide written certification establishing Sullivan has a medical degree in occupational therapy, physiatry therapy, or a related field, and that Fischer change any policy permitting inappropriately trained DOCCS personnel from making decisions regarding requests for reasonable accommodation of disabilities, requiring instead that such requests be reviewed by trained medical phsycians. *Id.* at 000509. On November 13, 2008, IGRC denied the inmate grievance on the basis that Plaintiff's door opener request was unreasonable because security doors are required to be opened by staff and, in the rare event Plaintiff needed to open a door, Plaintiff could seek assistance from a staff member or another inmate. Sullivan Declaration Exh. H at Bates No. 000503.

On November 18, 2008, Plaintiff filed an appeal of the IGRC decision to Livingston's Superintendent, asserting Sullivan's denial of Plaintiff's door opener request was an "abuse of discretion" and "arbitrary and capricious," insofar as Sullivan disregarded two medical evaluations in making such decision. Sullivan Declaration Exh. H at Bates Nos. 000516-517. Plaintiff further asserted Sullivan's failure to follow the recommendation of a medical professional constituted denial of adequate medical

---

[5] The record includes no statements from Mrs. Simmons in support of Plaintiff's contentions.

care, exhibits deliberate indifference to Plaintiff's medical needs, and violates Plaintiff's rights under the ADA insofar as non-medical personnel are permitted to make decisions on reasonable accommodation requests. *Id.* Plaintiff's appeal to the Superintendent was denied on November 19, 2008 ("Superintendent's Decision"). *Id.* at Bates No. 000515.

On November 21, 2008, Plaintiff appealed the Superintendent's Decision to DOCCS Central Office Review Committee ("CORC"), asserting a level arm door opener is a "device" within the meaning of Title II of the ADA, and DOCCS Directive No. 2614, that Sullivan was unqualified to make a determination on the door opener request because Sullivan does not possess "a medical degree in occupational therapy, physiatry, or any related field promoting recovery or rehabilitation," that Sullivan's failure to implement the recommendation of a physician trained in the area of "anatomical loss" resulted in Sullivan rendering a "personal evaluation for which she is not trained," was an abuse of discretion, arbitrary and capricious, and disregarded two medical evaluations. Sullivan Declaration Exh. H at Bates No. 000504. On December 17, 2008, Plaintiff's appeal of the Superintendent's Decision was unanimously denied by CORC as unreasonable given that "[s]taff can open the security doors, and an inmate assistant or staff can open any other doors that the grievant cannot open." *Id.* at Bates No. 000501.

Plaintiff maintains that following the denial of the door opener request and exhausting the inmate grievance procedure regarding such denial, Plaintiff was subjected to numerous retaliatory acts, including 19 searches of Plaintiff's cube between February 20, 2009 and December 28, 2009. When the searches commenced,

Plaintiff was housed at Livingston, yet the searches continued after Plaintiff was transferred to Orleans Correctional Facility ("Orleans").  Complaint at 8.  Plaintiff also maintains that when he was first transferred to Orleans, unspecified prison officials deprived Plaintiff of his auxiliary aid/typewriter for 56 days, during which time Plaintiff was unable to communicate with his family or assigned counsel.  *Id.*  Plaintiff further maintains upon being transferred to Bare Hills Correctional Facility ("Bare Hills"), he was housed in a dormitory that was not equipped with support rails in the bathrooms, in violation of Plaintiff's approved accommodations.  *Id.* at 9.


**DISCUSSION**

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255); *Rattner*, *supra*.  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary

judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Insofar as Defendants are alleged to have violated Plaintiff's civil rights, pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under

color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). Here, Plaintiff alleges Defendants violated his right to reasonable accommodation of his physical disability in violation of Title II of the ADA and § 504 of the Rehab Act. Nevertheless, insofar as Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for violations of the ADA and the Rehab Act, because both the ADA and the Rehab Act provide for private causes of action, Plaintiff need not rely on § 1983 for such relief.

Defendants argue in support of summary judgment that the action must be dismissed against Defendants Sullivan and Raymond because there is no individual liability under Title II or § 504, Defendants' Memorandum at 5-6, Plaintiff's request for injunctive relief is moot because Plaintiff is no longer in DOCCS custody, *id.* at 7-8, the punitive damages Plaintiff requests are not available against the State in ADA or Rehab Act actions, *id.* at 8, the alleged violations of the ADA and the Rehab Act are without merit because there Plaintiff cannot establish the claimed violations were motivated by discriminatory animus or ill will based on Plaintiff's disability, nor is a public entity required to offer an accommodation that imposes undue hardship on its programs, *id.* at 8-12, Plaintiff's retaliation claims are barred by the Eleventh Amendment Sovereign

Immunity Clause, *id.* at 12-14, and neither Sullivan nor Raymond was personally involved in the claimed acts of retaliation. *Id.* at 14-17. In opposition to summary judgment, Plaintiff alleges Defendants, by ignoring the recommendation of medical personnel and denying Plaintiff's door opener request and Plaintiff's inmate grievance, substituted their own personal assessment of Plaintiff's limitations and abilities, in violation of New York Education Law § 6530, the Constitution, Title II, § 504, Directive No. 2614, and the Fourteenth Amendment Due Process Clause. Plaintiff's Memorandum at 1-3. Plaintiff further maintains Defendants were deliberately indifferent to his serious medical needs. Plaintiff's Memorandum at 1-2. In further support of summary judgment, Defendants argue that Plaintiff (1) incorrectly asserts the only acceptable accommodation of his physical disabilities was that recommended by the outside medical consultant, Murphy Declaration ¶ 5, (2) fails to allege he was not able to travel throughout the Livingston Correctional Facility, *id.* ¶ 4, (3) was denied any medical treatment for his disability, *id.* ¶ 7, (4) cannot point to any fact establishing any Defendant, in addressing Plaintiff's lever door opener request and grievance, acted with ill will or discriminatory animus, *id.* ¶ 8, and (5) fails to allege any individual Defendant was personally involved in the alleged retaliatory acts against Plaintiff, *id.* ¶¶ 8-9.

## 2. Injunctive Relief

Undisputed by Plaintiff is Defendants' assertion, Defendants' Memorandum at 7, that although incarcerated when this action was filed, Plaintiff has since been released from DOCCS's custody. As such, Defendants maintain Plaintiff's request for a statewide injunction stopping DOCCS employees from acting as ADA coordinators and

making medical assessments must be denied because the issue is now moot. *Id.*
Plaintiff has not responded to this argument.

It is basic "that a plaintiff have a 'personal stake' in the litigation." *Fox v. Board of Trustees*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *United States Parole Commission v. Geraghty*, 445 U.S 388, 396 (1980)), *cert. denied*, 515 U.S. 1169 (1995). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome." *Id.* (internal quotation marks and citations omitted). An incarcerated plaintiff's claims for injunctive relief against DOCCS generally are rendered moot by the plaintiff's release from custody. *See Muhammad v. City of New York Department of Corrections*, 126 F.3d 119, 123 (2d Cir. 1997) (holding appeal rendered moot when filed four years after former inmate's release from DOCCS's custody because plaintiff no longer had any continuing personal stake in outcome of appeal regarding whether DOCCS was required to conduct separate congregate services for Nation of Islam inmates and to recruit chaplains on a basis permitting the hiring of Nation of Islam ministers).

The sole exception to this "mootness doctrine" occurs only where the moot issue is "capable of repetition, yet evading review," which "applies only in exceptional situations." *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995) (citing cases). Absent a class action, the mootness doctrine exception "is limited to situations where '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (citing cases). Further, where "the repetition of the events giving rise to the preliminary injunction is entirely speculative,

the mere 'theoretical possibility' that this scenario will arise again is not sufficient for the capable of repetition exception to apply." *Id.* (citing *Fox*, 42 F.3d at 143).

Because Plaintiff is no longer incarcerated, a fact not disputed by Plaintiff, and the possibility of a repeat of the events giving rise to the request for injunctive relief is merely theoretical, Plaintiff no longer has a continuing personal stake in the rendering of medical assessments by DOCCS's ADA coordinators. As such, Plaintiff's request for injunctive relief no longer presents a live controversy and is DISMISSED as moot.

### 3.    Individual Liability Under Title II and § 504

Initially, neither Title II nor § 504 provides for individual liability. Specifically, Title II of the ADA prohibits discrimination by a "public entity," defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority . . . ." 42 U.S.C. § 12131(1)(A)-(C). Similarly, § 504 of the Rehab Act provides that no qualified individual with a disability "shall, solely by reason of [such] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . . " 29 U.S.C. §794(a). Accordingly, by definition, no individual liability under the ADA or the Rehab Act lies against either Defendant Sullivan or Raymond. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").

**4.     Merits of Substantive ADA and Rehab Act Claims**

Plaintiff claims that Defendants failed to reasonably accommodate his disability, the partial or complete amputation of all ten digits on both hands, by denying Plaintiff's' request that all standard door knobs within Livingston be replaced with arm level door openers and emergency push bars which would be easier for Plaintiff to manipulate. Complaint, First Claim.  Defendants argue in support of summary judgment that it is DOCCS's policy to provide reasonable accommodations to disabled inmates in accordance with established procedures, and that Plaintiff was provided with numerous reasonable accommodations for his disability while in DOCCS's care and custody, and was never excluded from participating in or enjoying any program or service because of his missing digits, but that Plaintiff's request that all standard door knobs at Livingston be replaced with level arm door openers and emergency push bars was denied as unnecessary and unfeasible, especially given that most of Livingston's doors are controlled be security staff, rather than by inmates, such that Plaintiff would not have had access to most doors.  Defendants' Memorandum at 9-11.  Defendants also assert that other accommodations provided to Plaintiff, including the prosthetic Dycem glove-like device, which was specially made for Plaintiff in response to an earlier request for reasonable accommodation made while Plaintiff was housed at Livingston, was designed to assist Plaintiff in his activities of daily living by facilitating Plaintiff's grip on objects, including standard door knobs.  *Id.* at 10.  According to Defendants, replacing all standard door knobs within Livingston was thus unnecessary and also cost prohibitive, such that offering the accommodation would have posed an undue hardship on the correctional facility's operation.  *Id.* at 11.  Plaintiff argues in opposition to

summary judgment that because Dr. Forrester and Mrs. Simmons recommended the level arm door openers and emergency push bars, Defendants were required to accommodate Plaintiff's door opener request, and that failing to do so establishes Defendants Sullivan and Raymond substituted their non-medical opinions for that of medically-trained professionals. Plaintiff's Memorandum at 1; Plaintiff's Declaration ¶¶ 2-8. In further support of summary judgment, Defendants point to Plaintiff's failure to allege that DOCCS's failure to accommodate his physical disability by replacing all door knobs within Livingston with the level arm door openers and emergency push bars at all hindered Plaintiff's ability to travel throughout the correctional facility or to participate in any programs but, rather, Plaintiff merely contends that strict compliance with the outside medical consultant's suggestion was required, and ignores the fact Plaintiff could operate the standard door knobs with use of the Dycem prosthetic. Murphy Declaration ¶¶ 4-6.

"The ADA was enacted to 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). As relevant to the instant case, Title II proscribes discrimination against individuals with disabilities in access to public services, specifically providing, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehab Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Despite some "subtle differences" between the ADA and the Rehab Act, "the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (internal quotation marks and citation omitted). The key difference between Title II and § 504 is that § 504 pertains to entities receiving federal financial assistance, whereas Title II reaches private entities, yet when considered together, Title II and § 504 may be treated identically. *Id.*

To establish a violation of Title II of the ADA or § 504 of the Rehab Act, Plaintiff must demonstrate that (1) he is a "qualified individual with a disability," (2) he was either excluded from or denied participation in some public entity's services, programs, or activities, or was otherwise discriminated against by a public entity, and (3) such exclusion, denial of benefits or discrimination was because of Plaintiff's disability. *See* 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794 (Rehab Act); *Civic Association of Deaf of New York City v. Giuliani*, 915 F.Supp. 622, 634 (S.D.N.Y. 1996). To establish a violation of § 504 of the Rehab Act, Plaintiff also must establish Defendants receive federal funding. *Henrietta D.*, 331 F.3d at 272. In the instant case, Defendants do not dispute that Plaintiff, based on his physical condition, specifically, the complete or partial amputation of all ten of Plaintiff's fingers, is a "qualified individual with a disability" who is protected under Title II and § 504; rather, the parties contest whether the denial of Plaintiff's door opener request and subsequent grievance was a denial of Plaintiff's right

to participate in, or to benefit from some service, program or activity and, if so, whether Defendants' denial was based on some discriminatory motive or ill will.

Plaintiff attributes Defendants' denial of Plaintiff's lever door opener request and subsequent grievances to Defendants' substitution of their personal assessment of Plaintiff's disability for the recommendation of medical personnel, thereby depriving Plaintiff of a reasonable accommodation for his disability and placing Plaintiff at risk of harm by depriving Plaintiff of the ability to open doors within Livingston Correctional Facility, an unsafe environment by virtue of being a correctional facility. Defendants maintain that although Title II and § 504 prohibit discrimination against qualified disabled individuals, requiring such disabled individuals receive "reasonable accommodations" to permit access to and participation in public services and programs, in the instant case, Plaintiff was afforded all reasonable accommodations, and never excluded from participating in any program because of Plaintiff's disability. Defendants' Memorandum at 9-10. Defendants further maintain the accommodation Plaintiff sought but was denied, *i.e.*, replacing all standard door knobs at Livingston with level arm door openers and emergency push bars, was neither necessary nor feasible because Plaintiff could either use his Dycem gloves to manipulate the standard door knobs, or have an inmate assistant or staff member open any door accessible to Plaintiff, and that other doors were to be operated only by staff security personnel. *Id.* at 10-11. As such, requiring Defendants to replace standard door knobs with level arm door openers and emergency push bars would impose an undue hardship on DOCCS. *Id.* at 11.

Although Title II and § 504 prohibit discrimination against qualified disabled individuals, and require such individuals receive "reasonable accommodations"

permitting access to and meaningful participation in public services and accommodations, neither Title II nor § 504 requires any public entity to offer an accommodation that "imposes undue hardship" on the entity's operation. *Powell v. National Board of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). "Undue hardship" is defined as "one requiring significant difficulties or expense when considered in light of a number of factors, one factor being the type of service or product being offered." *Id.* at 88. In the instant case, Defendants argue, and Plaintiff does not dispute, that replacing all standard door knobs within Livingston with level arm door openers and emergency push bars would have been not only cost prohibitive, but unnecessary given that Plaintiff, as an inmate, did not have access to most of the correctional facility's doors incident to the facility's necessary security measures, that Plaintiff had already been provided with the Dycem glove-like prosthetic to assist Plaintiff with gripping objects, including the standard door knobs, and that Plaintiff, if unable to open a particular door despite the Dycem glove-like prosthetic, could have sought assistance from an inmate aid or another inmate. Significantly, Plaintiff does not argue that he was unable to manipulate standard door knobs with the Dycem glove-like prosthetic, that he could not have obtained assistance, or that his inability to manipulate any particular door interfered with or hindered his permitted movement throughout Livingston or his participation in any program. Accordingly, Plaintiff has failed to demonstrate the existence of any genuine issue of material fact which, if determined in Plaintiff's favor, would establish Defendants discriminated against Plaintiff by failing to reasonably accommodate his disability.

Summary judgment on Plaintiff's Title II and § 504 claims is therefore GRANTED in favor of Defendants.


5.      **Retaliation**

Plaintiff claims that after he filed his inmate grievance challenging the denial of his level arm door opener request, he was retaliated against by being subjected to searches of his cube at Livingston, and that such searches continued after Plaintiff was transferred to Orleans where Plaintiff was also denied access to his auxiliary aid/typewriter for 56 days, and then transferred to Bare Hills where Plaintiff was housed in a dormitory that was not equipped with railings in the bathrooms.  Defendants assert any retaliation claim is necessarily brought pursuant to 42 U.S.C. § 1983 and is barred against the State by the Eleventh Amendment's immunity, Defendants' Memorandum at 12-14, and against the individual Defendants for lack of personal involvement given Plaintiff's failure to allege, and the complete absence of any evidence suggesting, either Sullivan or Raymond was personally involved in the alleged retaliatory acts. Defendants' Memorandum at 14-17.

Preliminarily, although Plaintiff's disability discrimination claim under the ADA is brought only pursuant to Title II of the ADA, whereas retaliation claims under the ADA are governed by Title V, Plaintiff has not alleged retaliation under the ADA. Nevertheless, in light of Plaintiff's *pro se* status, the court liberally construes the Complaint as alleging a retaliation claim under Title V.  *See Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 762 (2d Cir. 1990) (papers filed by *pro se* plaintiff held to less stringent standard than those drafted by attorneys and citing *Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972)). Further, insofar as the Complaint can be construed as alleging the retaliation claim under § 504 of the Rehab Act, "[t]he elements of a retaliation claim under the Rehabilitation Act are the same as the Americans with Disability Act. . . ." *Burgess v. Harris Beach PLLC*, 346 Fed.Appx. 658, 660 (2d Cir. 2009) (citing *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 148-49 (2d Cir. 2002)). Even with such liberal construction, however, Plaintiff cannot maintain a retaliation claim against Defendants under Title V or § 504.

In particular, no claim under Title V may be maintained against an individual defendant, including Sullivan and Raymond, whether acting in an official, or personal, capacity. *See Warren v. Goord*, 2006 WL 1582385, at * 17-20 (W.D.N.Y. May 26, 2006) (holding "[t]he failure to so provide for a remedy [for retaliation] is consistent with the fact that nowhere within the ADA's statutory scheme is there any provision for a cause of action against an individual defendant, regardless of capacity, for any substantive violation of ADA Titles I, II or III [such that] construing Title V in light of the ADA's complete statutory scheme . . . establishes that Title V similarly does not provide for a claim for retaliation against an individual defendant."), *aff'd*, 2008 WL 5077004 (2d Cir. 2008). Furthermore, although not addressed by the Second Circuit, district courts within the Second Circuit have consistently held that New York has not abrogated its sovereign immunity with regard to Title V retaliation claims under the ADA. *See Moshenko v. State University of New York at Buffalo*, 2009 WL 5873236, at * 3 (W.D.N.Y. Sept. 16, 2009) (citing *Chiesa v. New York State Department of Labor*, 638 F. Supp.2d 316, 323 (N.D.N.Y. 2009); *Warren v. Goord*, 2006 WL 1582385, at * 17 (W.D.N.Y. 2006), *aff'd on other grounds*, 2008 WL 5077004 (2d Cir. 2008), *cert. denied*,

__ U.S. __, 130 S.Ct. 1039 (2009); and *Salvador v. Lake George Park Commission*, 2001 WL 1574929, at * 3 (N.D.N.Y. 2001) ("There is no indication that Congress, in passing §§ 12203(a) and (b) of the ADA, was concerned with a pattern or practice of states interfering with others' compliance with the mandates of the ADA. Those sections of the ADA, therefore, cannot apply to the states for to do so would unlawfully abrogate their sovereign immunity."), *aff'd*, 35 Fed.Appx. 7 (2d Cir.), *cert. denied*, 537 U.S. 1002 (2002)). Accordingly, no Title V or § 504 retaliation claim may be maintained against any Defendant whether in the individual or official capacity.

Insofar as the Complaint can be construed as alleging a retaliation claim in violation of 42 U.S.C. § 1983, the State, and Defendants Sullivan and Raymond in their official capacities, enjoy immunity under the Eleventh Amendment from liability on such claim. *Amaker v. New York State Department of Correctional Services*, 435 Fed.Appx. 52, 54 (2d Cir. 2011). The claim also fails as against Defendants Sullivan and Raymond for lack of personal involvement required to support liability in their individual capacities.

Local government officials sued in their official capacities are "persons" for purposes of civil rights actions. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 690-91 (1978). To establish liability under § 1983, a plaintiff must show the defendant was personally involved in the alleged constitutional violation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). A mere linkage in the chain of command, however, is insufficient to implicate a government official in a § 1983 claim. *Id.* To establish supervisor liability under § 1983, the plaintiff must show at least one of the following:

> "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

Here, Plaintiff alleges that because he filed a grievance regarding the denial of his request for level arm door openers and emergency push bars, he suffered various retaliatory acts including repeated cube searches at Livingston, the withholding of his auxiliary aid/typewriter for 56 days at Orleans, and a transfer to Bare Hills where the dorm bathrooms were not equipped with support rails. Complaint at 8-9. Even assuming, *arguendo*, that such retaliatory acts occurred, Plaintiff fails to attribute any responsibility for the alleged retaliatory acts to Defendant Sullivan or Raymond, both of whom have submitted declarations establishing the conduct Plaintiff characterizes as retaliatory was outside the scope of their respective job responsibilities.

In particular, Sullivan, in her position as Deputy Superintendent of Programs at Livingston, is responsible for "handling requests for accommodations based upon an inmate's disability at [Livingston]." Sullivan Declaration ¶¶ 1, 4. According to Sullivan, because her job responsibilities are limited to program issues at Livingston, she is not involved in cell searches, which are the responsibility of security officials, nor is she involved in disability accommodation requests at any other correctional facility. *Id.* ¶ 11. Similarly, Raymond, who, at all times relevant to the events alleged in the Complaint, was DOCCS's ADA Coordinator, was not responsible for or involved "with cube searches which are the responsibility of the security officials at Livingston." Raymond Declaration ¶¶ 1, 10. Raymond maintains that as DOCCS's ADA Coordinator, he

received all disability-related grievances from each correctional facility, but the only accommodation request Plaintiff made concerning his typewriter at Orleans was for a special-order typewriter ribbon, which was granted, but Raymond never received any complaint regarding Plaintiff's actual typewriter. *Id.* ¶¶ 7, 10. Plaintiff has failed to rebut any of these assertions by Sullivan and Raymond. The record is thus devoid of any evidence that either Sullivan or Raymond had any involvement in ordering searches and other retaliatory actions asserted by Plaintiff.

Plaintiff's failure to link the alleged retaliatory conduct to any particular Defendant is fatal to his retaliation claim. *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (affirming district court's granting defendant, supervising physician at correctional facility, judgment as a matter of law following trial on inmate plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim where plaintiff failed to present any evidence establishing defendant physician ever examined or diagnosed plaintiff's medical condition, or was directly responsible for scheduling treatments or procedures, or following up with continuing treatment, or was aware of or instituted any unconstitutional practice or act or was grossly negligent in supervising subordinates). Accordingly, summary judgment on Plaintiff's retaliation claim is GRANTED in favor of Defendants.

**6.      Remaining Arguments**

Because the undersigned is granting Defendants' motion for summary judgment and dismissing the Complaint in its entirety, Defendants' remaining arguments regarding mootness and the availability of punitive damages are not addressed.

## CONCLUSION

Based on the foregoing, Defendants' motion seeking summary judgment (Doc. No. 50), is GRANTED; the Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 3, 2013
            Buffalo, New York

**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App.P. 4(a)(1)(A) and (c). A notice of appeal must be filed with the Clerk of this District Court as required by Fed.R.App.P. 3(a)(1).**